IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

**EXPORT PACKERS COMPANY LIMITED**,
An Ontario (Canada) Corporation,

         Plaintiff,

v.

**GREAT AMERICAN TRUCKING, INC.**,
a Florida Corporation,

         Defendant.
_____/

## **COMPLAINT**

Plaintiff EXPORT PACKERS COMPANY LIMITED ("Export Packing"), sues GREAT AMERICAN TRUCKING, INC. D/B/A SELECT FOODS ("GAT") and states:

## **PARTIES**

1. Plaintiff Export Packing is an Ontario (Canada) corporation with its principal place of business at 107 Walker Drive, Brampton, Ontario, Canada L6T 5K5, and is, in all respects, *sui juris*.

2. Plaintiff is in the business of marketing, selling, and distributing food products throughout the world.

3. Defendant GAT is a Florida Corporation, with principal place of business at 785 S. Congress Avenue, Delray Beach, FL 33445.

4. Defendant GAT manufactures, produces and sells various pork products, including pickled pork tails.

## JURISDICTION

5.      This is a civil action invoking the diversity jurisdiction of this Court pursuant to 28 U.S.C. Sec. 1332(a)(2) as it is between a plaintiff who is a citizen or subject of a foreign state, Canada, and the Defendant, who is a corporation which is a citizen of the State of Florida, having been organized and domiciled in the State of Florida. The matter in controversy in this action exceeds the sum of $75,000.00 exclusive of interest and costs.

6.      This Court has personal jurisdiction over GAT because GAT is a corporation registered in the State of Florida and its principal place of business in the State of Florida.

## VENUE

7.      Venue is proper in Palm Beach County, Florida, because the acts that gave rise to the claims raised herein occurred, in whole or in part, in Palm Beach County, Florida, and the principal place of business of Defendant is in Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

8.      On or about March 23, 2022, Plaintiff placed order No. PO1297887 for 865 pails of pickled pork tails from Defendant. *See* **Exhibit 1**.  Ultimately, 857 pails of pickled pork tails were delivered and invoiced pursuant to this purchase order.  *See* **Exhibit 2**.

9.      On or about March 28, 2022, Plaintiff placed order No. PO1298878 for 865 pails of pickled pork tails from Defendant. *See* **Exhibit 3**. Ultimately, 857 pails of pickled pork tails were delivered and invoiced pursuant to this purchase order.  *See* **Exhibit 4**.

10.     On or about May 10, 2022, Plaintiff placed order No. PO1308212 for 855 pails of pickled pork tails from Defendant. *See* **Exhibit 5**.  Ultimately, 857 pails of pickled pork tails were delivered and invoiced pursuant to this purchase order.  *See* **Exhibit 6**.

11. On or about June 22, 2022, Plaintiff placed order No. PO1308213 for 857 pails of pickled pork tails from Defendant. *See* **Exhibit 7**. Ultimately, 857 pails of pickled pork tails were delivered and invoiced pursuant to this purchase order. *See* **Exhibit 8**.

12. In total, Plaintiff purchased 3,428 pails (119,980 pounds) of pickled pork tails in-brine (the "Products") from Defendant for a purchase price of $236,660.55.

13. The Products Plaintiff purchased through the purchase orders described in paragraphs 9-12 herein were immediately re-sold to one of Plaintiff's long standing and valued customers located in Panama and transportation arrangements were made for the Products to be shipped directly to the Panamanian customer.

14. The Products were shipped Florida to Panama in four (4) different shipping containers via ocean vessel: The first shipping contained was shipped from the port of Miami on April 29, 2022; the second shipping contained was shipped on May 20, 2022; the third shipping contained was shipped on June 10, 2022; and the fourth shipping contained was shipped on June 24, 2022. All four shipping containers arrived in Panama and were unloaded.

15. However, once the Products arrived in Panama, it was immediately clear that there were significant health issues with a large quantity of the Products and that they could not be sold. Many of the pails containing the Products were swollen (due to decomposition of the Product contained therein) and a strong rotten odor was emanating from the pails (the "Defective Products").

16. Upon learning of the Defective Products, Plaintiff, working with its Panamanian customer, arranged for inspections of the Defective Products by an accredited surveyor. Their inspection confirmed that a significant number of pails in each load were in a state of decomposition and unfit for human consumption.

17. It is evident that the decomposition of the Defective Products was due to improper production and/or packing of the Defective Products by GAT.

18. Upon discovery of the Defective Products, Plaintiff notified Defendant immediately of the issues concerning these shipments.

19. The Defective Products were ultimately destroyed on August 3, 2022 by an accredited third party destruction firm. *See* **Exhibit 9**.

20. In addition to the purchase price of the Products, in order to export the Products to Panama, Plaintiff also had to pay freight and logistics charges, plus import taxes for each shipping container as well as destruction charges for the Defective Products.

21. All the Products were paid in full by Plaintiff via various wire transfer to Defendant for $236,660.55.

22. In total, as a result of Defendant's sale of the Defective Products sold by Defendant, Plaintiff has sustained damages in the amount of $159,702.19, for which Plaintiff holds Defendant accountable.

23. On or about August 24, 2022, Plaintiff formally demanded from Defendant payment of its losses in the amount of $159,702.19.

24. Defendant has failed to address Plaintiff's claims in respect to the Defective Products.

25. As a result of and but for Defendant's actions with respect to the Defective Product, Plaintiff had to assume the loss of the purchase price of these Defective Products with its Panamanian customer as well as incurred destruction charges for the Defective Product.

26. Plaintiff retained counsel and, on October 7, 2022, made demand on the Defendant for the amounts owed, a copy of which demand is attached as **Exhibit 10**.

27. To date, Defendant has failed to respond to the demand letter or otherwise pay Plaintiff the balance owed for the Defective Products.

28. All conditions precedent to this action have been performed, have occurred or have been waived or excused.

## COUNT I – BREACH OF CONTRACT

29. Plaintiff realleges Paragraphs 1 through 28 above.

30. There exist valid and enforceable contracts for the sale of goods between Export Packers and GAT, as memorialized in e-mails, purchase orders and invoices that contain definitive and certain terms, namely description of goods, quantities ordered, price, Incoterms and terms of payments.

31. Plaintiff performed under these contracts by paying Defendant the purchase price for the Products.

32. Defendant breached the contracts with Plaintiff by delivering Plaintiff, non-conforming goods which were either in, or were produced and packaged in such a manner that they would soon become in, a state of decomposition and unfit for human consumption and not able to be used for the purpose they were purchased.

33. Plaintiff gave timely and reasonable notice to Defendant of the quality issues in the Defective Products Plaintiff had sold to Defendant.

34. As a direct and proximate of GAT's breaches, Plaintiff has been damaged in the sum of $159,702.19 by, among other things, failing and refusing to pay Plaintiff the value of the Defective Products and the associated losses incurred by Plaintiff.

**WHEREFORE,** Plaintiff prays for judgment against Defendant GAT, for damages, costs, pre and post judgment interest, and for any and all other relief deemed just, fair, and equitable.

## COUNT II – BREACH OF WARRANTY

35. Plaintiff restates and realleges all the allegations set forth in paragraphs 1 through 28 above as if fully stated herein.

36. The Products sold and delivered to Plaintiff did not confirm to that which was ordered them in that Defective Products were either in, or were produced and packaged in such a manner that they would soon become in, a state of decomposition and unfit for human consumption and not able to be used for the purpose they were purchased.

37. The Defective Product were non-confirming when Plaintiff took delivery from Defendant and when risk passed to the Plaintiff.

38. As a direct and proximate result of Defendant's delivery of non-conforming goods, Plaintiff has suffered damages in the sum of $159,702.19.

**WHEREFORE,** Plaintiff prays for judgment against Defendant GAT, for damages, costs, pre and post judgment interest, and for any and all other relief deemed just, fair, and equitable.

Dated: January 13, 2023        Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, FL 33131
Telephone: (305) 567-5576
By: /s/ *Eric N. Assouline*
Eric N. Assouline (FL Bar #106143)
ena@assoulineberlowe.com
Daniel E. Vielleville, Esq., FBN 904096
dev@assoulineberlowe.com

*Attorneys for Plaintiff, Export Packers Company Limited*